Good morning, Your Honors. I'm Frank Washko for Appellant Paul Redd. May it please the Court, the District Court in this case dismissed the Eighth Amendment cruel and unusual punishment claim, in this case for failure to exhaust administrative remedies, but it was wrong to do so for two separate reasons. First, a plaintiff who exhausts his Eighth Amendment cruel and unusual punishment claim that's been styled as a deliberate indifference claim has then necessarily also exhausted his excessive force claim. And second, the defendant in this case repeatedly took affirmative actions to waive the exhaustion defense in this case. So I'd like to discuss each of these issues in turn. First, with regard to the Eighth Amendment issue, both the District Court and the defendant in this case concluded that Mr. Redd exhausted his administrative remedies with regard to his Eighth Amendment cruel and unusual punishment claim when it was styled as a deliberate indifference claim. It's incongruous, then, to argue that when it's now styled as an Eighth Amendment cruel and unusual punishment claim for excessive force that he did not exhaust. The reason is, in the Ninth Circuit, the exhaustion is essentially a notice-cleaning standard. The prisoner plaintiff needs to alert the prison of the nature of the wrong that occurred and put the prison on notice of the misconduct. Once he did that, he's not required to prove facts sufficient for a legal claim or to prepare the case for litigation. He only needs to make them aware of the wrong. The difference between an excessive force claim and a deliberate indifference claim is essentially a difference of ment re. In an excessive force claim, he must allege that the conduct was malicious and sadistic, as opposed to a deliberate indifference claim where he has to show that the actor knew and disregarded a significant risk. However, there's no case in the Ninth Circuit that states that he had to allege that ment re in his prison complaint. He only needed to make them aware of that conduct, and that conduct is the same whether it's a deliberate indifference claim or it's an excessive force claim. And, indeed, the defendants in its briefing has never really said what it thinks is lacking in Mr. Redd's prison complaint or what additional burden he needed to meet in order to bring an excessive force claim in the case. And then, secondly, with regard to the waiver issue, the defendant took at least four separate acts in this case that constitute waiver of an affirmative defense of exhaustion. The first thing it did was it failed to plead in an answer the affirmative defense of exhaustion of administrative remedies. The second thing it did was the defendant explicitly waived the defense of exhaustion against an Eighth Amendment cruel and unusual punishment claim when it was styled as deliberate indifference, and that kind of ties into the first issue. That constitutes explicit waiver of the defense. Is this case the same as our Ninth Circuit case, Olera v. Herrera? Well, it's very similar. We use that case in our briefing. In Olera, this Court said that the State can, in fact, waive if it doesn't assert the defense. But in our case, the defendant virtually did everything that it could do to waive this defense, and yet the district court still allowed the defense, which, in effect, negates Olera. If this had been raised in the summary judgment motion, would there have been something you could have done to go back and amend the grievance that had already been filed, assuming that there was a legitimate basis for such an amendment based on the motion? Well, I believe at that point, at the summary judgment stage, it was still too late for him to go back to the prison and do something to exhaust. But at the summary judgment stage, he still could have done something perhaps in discovery to show exhaustion or could have gotten additional evidence at that point. But part of the problem is the 12B defense was not raised until after the close of discovery, which kind of leads to the fourth point, which is just a blatant delay of about four years from when the court said you can now raise your 12B defense late, but I'll still allow it. The state delayed another four years after the close of discovery before it actually raised the defense at all. So, again, you kind of anticipated my problem. It kind of negates the point of Olera, which is that the state can, in fact, waive the defense. But if it's allowed after all this, it essentially means that the state could never waive this defense and could hold it in reserve for as long as it wants and raise it at any time during the case. So. Okay. You may. Just a moment. Sure. Do you hear me? No, I'm afraid there's a problem. Okay. Now, Judge Hugg, we didn't get to hear that question because the TV froze. So could we ask you to go back? Thank you. Yeah. Would you explain to me why you consider it waived? Yes. I kind of consider it waived for four separate reasons. The first is that the defense was never included in an answer in the case. The defendant never filed an answer in the case. But there was no answer. So it can't be waived for failure to put it into files. Well, I would submit that failing to file an answer is, in effect, an end run around the requirement to put it into an answer. He's essentially punted the issue by just not filing an answer and that the defendant shouldn't be rewarded for not filing an answer. Was he required to file an answer? Yes. When he made a motion for some adjustment? Well, at various times in the case. I think either at the beginning of the case after the filing of the complaint or after any amended complaint, he was required to file an answer in the case. If there is a response to the complaint by some adjustment, is that not enough without filing an answer? I don't believe that is an answer. But that does kind of lead to another issue. Well, sometimes you can avoid an answer by filing within a certain period of time a motion to dismiss or other such dispositive pleading. So I think the question Judge Hud is asking you is, you know, does the summary judgment, was it timely to serve as a surrogate for the answer, and could it have, in effect, been a surrogate for an answer? I see. And I would submit that the answer is no. There was, immediately after the filing of the complaint, there was a 12B motion by the defendants, and that's where they specifically conceded the issue of exhaustion. And it was some number of years after that, and after subsequent motions, that there was a summary judgment motion. So it was, you know, possibly five years later when there was a summary judgment motion. Did you want to reserve your final time? I would like to reserve for a briefer rebuttal. May it please the Court. My name is Trice Maiorino. I'm with the Attorney General's Office of California. We represent the Respondent, Michael Daly, in this action. Fifteen years ago, Mr. Redd submitted two inmate grievances regarding an incident in a July 24th, 1995, incident in the law library at Pelican Bay State Prison. Neither one of those inmate grievances conveyed his claim of excessive force against Mr. Daly. One grievance requested that new reports be written, because he believed the reports that had been written by law library staff were incomplete. Another inmate grievance complained that the law library staff had handled the lead chains that's used to transfer one or more inmates from point A to point B were mishandled and that they were handled without common sense, without caution, and without responsibility. In neither one of those inmate grievances did Mr. Redd complain or convey his claim that he had been subjected to excessive force by Mr. Daly. Well, is that required? If he put on notice the facts that occurred for judgment, does that require him to specify the particular cause of action? Your Honor, under the Prison Litigation Reform Act, an inmate is required to convey his claim sufficiently so that prison officials can then prepare an appropriate response to address the grievance filed by the inmate. And he didn't do that. Why wouldn't that be enough to alert the prison officials in this instance? In this instance, Mr. Redd's inmate grievances were insufficient because they didn't alert the prison that he was filing an excessive force claim. Even the language contained within his inmate grievances shows that he was actually complaining about a condition that he believed to be prison-wide, that he believed that prison officials were not handling lead chains responsibly and that that irresponsible manner was leading to instances similar to one that he claimed he had, but not just inmates, but that staff members were also falling or slipping on the chains. And that would, looking at the requirement to convey the claim so that an appropriate response could be formulated by the prison officials, would not have put the prison officials on notice that they had an excessive force claim. Well, let me pursue that a minute, because as I understand the Prison Litigation Reform Act, all it required to properly exhaust is compliance with prison grievance procedures. All that the California regulations require is that an inmate describe the problem and action requested. Now, didn't Mr. Redd easily meet this standard for excessive force claim by asserting that Mr. Daley kicked a chain directly in his path and suggesting that Daley had done it intentionally? No, Your Honor, he did not. In order to properly exhaust an inmate claim, the inmate must convey the claim, but to the extent that the prison officials can respond appropriately. Here, if he had properly conveyed his claim concerning an excessive force claim, the response from the prison authorities would have been much different. They would have been investigating an excessive force claim, and they would not have been dealing with Mr. Redd's characterization of these claims. Didn't he tell them what happened about kicking the chain in front of him and causing him to fall? In his 602, he did request that Mr. Daley state in a report that he caused the accident. During the investigation of the 602s, the inmate grievances at the different levels, he conveyed to the investigating officer that he was going to prove his case based on negligence. This would not have negligence in the manner of which the lead chain was handled, not just by Mr. Daley, but the way also that he had been trained to handle that lead chain, which is why he also included other prison personnel in his inmate grievances. He told the prison officials about the chain having Redd kicked in front of him, did he not? He stated that the lead chain had been kicked, but he did not convey that it was done as a matter of excessive force. That he fell and was injured as a result of it. I'm sorry, Your Honor, I didn't. That he fell and was injured as a result of that cane being kicked in front of him. Yes, that he slipped on the lead chain as a result. Well, even if you could impute to a prisoner the need to use such technical terms that we use that relate to mens rea and excessive force and that sort of thing, when he filed his amended complaint and it was very clear that he had both a deliberate indifference and an excessive force claim, the State waits two years after that to file a summary judgment, right? Your Honor, when he filed the amended complaint, the amended complaint was screened by the lower court, and at that time there was no excessive force claim found at the initial screening of the amended complaint. The excessive force claim arose. His claim for deliberate indifference morphed in 2004, almost ten years after the alleged incident in the law library. And that was after the Court granted the motion for summary judgment for the deliberate indifference claim, but then at the same time found for the very first time an excessive force claim against Mr. Daley. But then the State didn't do anything. It mentioned it in a conference, but then it waits. Then there's like a six months go by. Then there's a motion for summary judgment in which nobody even mentions exhaustion. There is a motion for summary judgment filed in 2005, which was denied in 2007, and the matter was set for trial. And then within a year, the Mr. Daley moved for reconsideration of a motion based on exhaustion. Don't you think that's a little late in the game? In 2004, the State basically, you know, Daley says there could be a problem here with exhaustion, and then they go through a whole summary judgment motion and he doesn't do anything about it. Well, no, because it wasn't until 2006 that Defendant Daley actually had the affirmative defense of failure to exhaust by recent court decisions. And that was requiring inmates to properly exhaust their inmate appeals by following the administrative procedures in place so that the prison authorities can make a — have a full and fair opportunity to fix the mistakes that the inmate is alleging before they're being sued in Federal court. What about — two questions on the timing. One, the — they already — you had already recognized — you, meaning the State, had already recognized there was a problem in 2004 at the conference and didn't do anything. And you had a previous case of Porter v. Nussel says you have — the prisoner has to exhaust the claims of excessive force. So you didn't need to wait for Woodward v. Ngo to somehow divine an exhaustion defense. I mean, exhaustion defense had been on the table far before that 2006 case. Yes, Your Honor. But it wasn't until the clarification that Woodward v. Ngo provided that required proper exhaustion and then gave the — continued with the reasons for proper exhaustion was necessary so that through proper exhaustion that would be the only way that the prison authorities would become aware that there was a claim. So then you wait two years — assuming you're right about that case, you then wait two more years to invoke the defense that is now very clear. So that's where I'm having some trouble in the delay issue here. We — the — in 2007 was when the order denying the motion after summary judgment came about. And within a year, in 2008, the defendant saw it leave to file his motion. Right. But if the motion was pending and you now knew you had a potentially slam-dunk defense, wouldn't that have been the time to go to the court and not wait and play the cards and see if you won that motion to see if you ought to amend and add another motion? As far as the filing of the motion — With respect to the exhaustion. I mean, it's like another two years out. I'm sorry, two years from — The time of the Woodford decision. Well, in 2006 was when the decision came about. But, I mean, this — the case does have a long history of at least 15 years. And relatively speaking, it's within a year defendants are asking for leave. And I do — I know that this — there is some indication in the record, because it's contained within the docket information, is that after the case was denied by the court — the motion for summary judgment was denied in 2007, there were some negotiations and discussions with Mr. Redd. And he also sought leave from the court to obtain counsel. It wasn't that defendants were attempting to sit on an affirmative defense that they believed was a slam-dunk or anything along those lines. But — Thank you. Okay. And I believe that my time is up. Thank you very much. Thank you. About a minute and a half. Okay. Just briefly as to this issue about Woodford v. Nego. I think you hit the nail on the head. That Porter v. Nestle in 2002, the Supreme Court case, clearly stated that they had this defense available to them. So it's the timeframe between 2002 and 2008 when they finally raised the defense. I mean, it could be six years if you look at it one way, or it could be at least four years from the time when they first asked to bring this motion. And I just wanted to point out that in our briefing, we included various cases from other circuits that show that delays in that timeframe, two years, three years, six years, are more than enough to find waiver in these cases. When did he finally obtain a lawyer? I don't — I can't say for sure, but I don't believe he ever had a lawyer at the district court. The district court. Okay. Right. Thank you. Thank you. I do want to say, I know this appeal is part of the pro bono project, and we appreciate counsel's participation in that. I also know that usually from the states, and in the case of the United States, when they're on the other side, it's much easier to deal in these cases when you do have professional counsel with the briefing. So I want to thank both counsel for your courtesies today and your argument. The case of Red v. Daly is submitted.
judges: Hug, Nelson D. W., McKeown